IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT ELKINS

**FEDERAL INSURANCE COMPANY,**

ELECTRONICALLY
FILED
**May 17 2018**
U.S. DISTRICT COURT
Northern District of WV

Plaintiff,

v.                                                    Civil Action No.:

2:18-CV-52 (Bailey)

**ALDERSON BROADDUS UNIVERSITY, INC.,**
**a West Virginia Corporation;**
**COLLINS MURPHY, as an employee of Alderson Broaddus**
**and as an individual;**
**KRISTINE BURNSIDE;**
**CAYLA RHODES;**
**ERICA BROOKS;**
**and EMILY SARVER,**

Defendants.

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Federal Insurance Company ("FIC"), by counsel, states as follows for its *Complaint for Declaratory Relief* ("Complaint"):

1.      FIC seeks a declaration by this Court that it has no obligation to defend or indemnify Defendant Collins Murphy ("Mr. Murphy"), and no obligation to indemnify Alderson Broaddus University, Inc. ("ABU"), pursuant to any provision of ForeFront Portfolio For Not-for-Profit Organizations Policy Number 8240-5087 (the "Policy") for claims made by Kristine Burnside, Cayla Rhodes, Erica Brooks, and Emily Sarver (collectively, the "Claimants") against ABU and Mr. Murphy in the following pending civil actions in the Circuit Court of Barbour County, West Virginia: (1) Civil Action No. 15-C-34; (2) Civil Action No. 15-C-35; (3) Civil Action No. 15-C-36; and (4) Civil Action No. 15-C-37 (collectively, the "Civil Actions").

## PARTIES

2.      FIC is an Indiana corporation with its principal place of business in New Jersey.

4829-9567-8822.1

3.      Defendant Alderson Broaddus University, Inc. is a West Virginia Corporation with its principal place of business in Philippi, Barbour County, West Virginia.

4.      Defendant Collins Murphy is, upon information and belief, a Maryland citizen and resident.

5.      Defendant Kristine Burnside is, upon information and belief, a West Virginia citizen and resident.

6.      Defendant Cayla Rhodes is, upon information and belief, a West Virginia citizen and resident.

7.      Defendant Erica Brooks is, upon information and belief, a Nevada citizen and resident.

8.      Defendant Emily Sarver is, upon information and belief, a West Virginia citizen and resident.

## JURISDICTION AND VENUE

9.      This action is instituted pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure. This action is ripe for adjudication because both ABU and Mr. Murphy seek coverage and/or defense from FIC for litigation filed against him by Claimants in the Civil Actions.

10.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 2201, as the matter in controversy involves a dispute between citizens of different states and, based upon the potential pecuniary impact of the claims that have been made by both ABU and Mr. Murphy under the Policy, the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

11.     An actual controversy exists between FIC and Mr. Murphy within the meaning of 28 U.S.C. § 2201. This Court, therefore, is vested with the power to declare and adjudicate the rights and responsibilities of the parties in this action with reference to the issues addressed by this Complaint.

12.     Furthermore, an actual controversy exists between FIC and ABU within the meaning of 28 U.S.C. § 2201.  This Court, therefore, is vested with the power to declare and adjudicate the rights and responsibilities of the parties in this action with reference to the issues addressed by this Complaint.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim or claims which are the subject of this dispute occurred within this district.  More specifically, ABU and Mr. Murphy operated in, and the events giving rise to the allegations made by the Claimants against ABU and Mr. Murphy, respectively, occurred in, Barbour County, West Virginia, which lies fully within this district.

## THE POLICY

14.     FIC issued the Policy for the policy period from May 1, 2014 to May 1, 2016.  The Policy contains two separate coverage sections (1) Directors & Officers Liability and Entity Liability Coverage Section (the "D&O Coverage Section"); and (2) the Employment Practices Liability Coverage Section (the "EPL Coverage Section").  The D&O Coverage Section and the EPL Coverage Section are subject to combined maximum aggregate liability of $5,000,000.00.  There is a $15,000.00 per claim retention.  Defense costs are outside the limits under both coverages.  A certified and complete copy of the Policy is attached hereto as **Exhibit A**, and its terms are incorporated as if set forth herein.

15.     The insuring clauses of the D&O Coverage Section of the Policy ("D&O") state, in pertinent part, as follows:

Individual Non-Indemnified Liability Coverage Insuring Clause 1

1.     The Company shall pay, on behalf of each of the **Insured Persons, Loss** for which the **Insured Person** is not indemnified by the **Organization** and which the **Insured** Person becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person,** individually or otherwise, during the **Policy Period,** or if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period,** but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions.

Individual Indemnified Liability Coverage Insuring Clause 2

2. The Company shall pay, on behalf of the **Organization, Loss** for which the **Organization** grants indemnification to an **Insured Person**, as permitted or required by law, and which the **Insured Person** becomes legally obligated to pay on account of any **Claim** first made against the **Insured Person,** individually or otherwise, during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by such **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions.

Entity Liability Insuring Clause 3

3. The Company shall pay, on behalf of the **Organization, Loss** which the **Organization** becomes legally obligated to pay on account of any **Claim** first made against the **Organization** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by the **Organization** or the **Insured Person** before or during the **Policy Period**, but only if such **Claim** is reported to the Company in writing in the manner and within the time period provided in Subsection 6 of the General Terms and Conditions.

16. The defense obligations under the D&O Coverage Section are set forth as follows in

Clause 10 of that section:

The Company shall have the right and duty to defend any **Claim** covered by this Coverage Section, even if any of the allegations in such **Claim** are groundless, false or fraudulent. Defense counsel shall be selected by the Company. The Company's duty to defend any Claim shall cease upon exhaustion of the applicable limit of liability.

17. The following pertinent definitions are set forth in Clause 4 of the D&O Coverage

Section, Clause 3 of the General Terms and Conditions Section, and by endorsement.

**Claim** means:

(1) when used in reference to the coverage provided by Insuring Clause 1 or 2:

(a) a written demand first received by an Insured for monetary damages or non-monetary relief, including injunctive relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading;

* * *

(2) when used in reference to the coverage provided by Insuring Clause 3:

(a) a written demand first received by an **Insured** for monetary damages or non-monetary relief, including injunctive relief;

(b) a civil proceeding commenced by the service of a complaint or similar pleading;

\* \* \*

Against an **Organization** for a **Wrongful Act**, including any appeal therefrom.

**Personal Injury Wrongful Act** means any:

(1)     false arrest, wrongful detention or imprisonment or malicious prosecution;

(2)     Libel, slander, defamation of character, or publication of material in violation of a person's right of privacy; or

(3)     wrongful entry or eviction or other invasion of the right of privacy.

**Wrongful Act** means:

(a)     any error, misstatement, misleading statement, act, omission, neglect, breach of duty, **Personal Injury Wrongful Act** or **Publisher Wrongful A**ct committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Insured Capacity** or, for purposes of coverage under Insuring Clause 3, by the **Organization**;

(b)     any other matter claimed against an **Insured Person** solely by reason of his or her serving in an **Insured Capacity**; or

(c)     any **Outside Capacity Wrongful Act**.

**Insured Capacity** means:

the position of capacity of an **Insured Person** that causes him or her to meet the definition of **Insured Person** set forth in the application Coverage Section. **Insured Capacity** does not include any position or capacity held by an **Insured Person** in any organization other than the **Organization**, even if the **Organization** directed or requested the **Insured Person** to serve in such position or capacity in such other organization.

\* \* \*

**EIIA D&O Amendatory Endorsement 3**

**Sexual Behavior** means any verbal or non-verbal act, communication, contact or other conduct involving sexual abuse, intimidation, discrimination, harassment or lewdness.

\* \* \*

18.    The following pertinent exclusions are set forth at Clause 5 of the D&O Coverage Section and by endorsement.

5.    The Company shall not be liable for **Loss** on account of any **Claim**:

* * *

(e)    [As amended by Endorsement 3, EIIA D&O Amendatory Endorsement, Form 14-02-21139 (06/2016)]

based upon, arising from, or in consequence of bodily injury, mental anguish, emotional distress, sickness, disease or death of any person  . . .

* * *

(j)    [As amended by Endorsement 3, EIIA D&O Amendatory Endorsement, Form 14-02-21139 (06/2016)]

made against any **Insured** based upon, arising from, or in consequence of:

(i)    the committing of any . . . willful violation of any statute or regulation by such **Insured**  . . .

* * *

as evidenced by a final and non-appealable judgment or adjudication in any underlying proceeding (other than a declaratory judgment proceeding brought by or against the Company).

* * *

(l)    for any employment-related **Wrongful Act**; or

* * *

(m)    [As amended by Endorsement 3, EIIA D&O Amendatory Endorsement, Form 14-02-21139 (06/2016)]

based upon, arising from, or in consequence of any actual or alleged discrimination against any person or entity that is not an **Insured**.

* * *

[Added by Endorsement 3, EIIA D&O Amendatory Endorsement, Form 14-02-21139 (06/2016)]

(iv)     based upon, arising from, or in consequence of any actual or alleged **Sexual Behavior** . . .

\* \* \*

Form 14-02-10191 (Ed. 3/2006) & 14-02-21139 (06/2016).

19.     The insuring clause of the EPL Coverage Section states, in pertinent part, as follows:

\* \* \*

Third Party Liability Coverage (if purchased)

2.     The Company shall pay, on behalf of the **Insureds, Loss** on account of any Third Party Claim first made against such Insureds during the Policy Period, or, if exercised during the Extended Reporting Period, for **Third Party Wrongful Acts**, but only if such **Third Party Claim** is reported to the Company in writing in the manner and within the time provided in Subsection 6 of the General Terms and Conditions of this Policy.

Definitions

[The following pertinent definitions are set forth at Clause 3 in the EPL Coverage Section]

\* \* \*

**Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of the Organization.

**Third Party Claim** means:

(1) Any of the following:

(a) a written demand for monetary relief or non-monetary relief;

(b) a civil proceeding commenced by the service of a complaint, summons, notice of application, writ, claim form or similar pleading in any jurisdiction in the world;

(c) an arbitration proceeding commenced by receipt of a demand or similar document; or

(d) an administrative, regulatory or tribunal proceeding commenced by the issuance of a notice of charge, formal investigative order or similar document,

which is brought and maintained by or on behalf of a **Third Party**
against any **Insured** for a **Third Party Wrongful Act**, including
any appeal therefrom[.]

\* \* \*

**Third Party Wrongful Act** means:

\* \* \*

(b)  [As amended by Endorsement 3, EIIA Employment Practices Liability
Amendatory Endorsement, Form 14-02-21136 (04/2014)]

harassment, including unwelcome sexual advances, requests for sexual
favors or other conduct of a sexual nature against a **Third Party**,

committed, attempted, or allegedly committed or attempted by any
**Organization** or by any **Insured Person** in his or her capacity as such.

## THE UNDERLYING FACTUAL BACKGROUND

20.     The coverage issue giving rise to this declaratory judgment arises out of the Civil

Actions and the facts giving rise thereto.  Each claimant filed separate Complaints on or about June

2015 against ABU, Mr. Murphy, and O'Dell Eargle.  The original Complaints were amended in or

about March 2016 and were ultimately consolidated.

21.     Claimants allege that in September 2014, they each learned that Mr. Murphy engaged in

inappropriate conduct by placing a hidden camera in the restroom in their dormitory, and then captured

and disseminated nude photographs of them to other students.  *See Amended Complaints*, ¶¶ 13, 16, 17,

24, attached hereto collectively as **Exhibit B**.

22.     The Amended Complaints assert the following causes of action:  (1) invasion of privacy;

instruction upon seclusion; (2) invasion of privacy; unreasonable publicity; (3) intentional infliction of

emotional distress and/or the tort of outrage; (4) West Virginia Computer Crime & Abuse Act, §61-3C-

16; (5) West Virginia Computer Crime & Abuse Act, § 61-8-28; and (6) negligent hiring, supervision,

and retention.

23.     During an October 14, 2014 interview at the Phillips Detachment of the West Virginia State Police, Mr. Murphy admitted that he placed two cameras in a bathroom at the Kincaid Dormitory on the ABU campus and took nude photographs of the Plaintiffs and others and then disseminated those photos to another student and one or more websites.

## TENDER OF CLAIM AND DEFENSE UNDER RESERVATION OF RIGHTS

24.     On October 31, 2014, FIC received a copy of an October 24, 2014 letter from Rhodes alleging violation of privacy as a result of Mr. Murphy's conduct and requesting that ABU put its insurance carriers on notice. On January 25, 2015, FIC advised ABU that the matter did not rise to the level of a D&O Claim, an Employment Claim or Third Party Claim, but accepted the letter as a Potential Third Party Claim which would serve as notice if the matter subsequently rose to the level of a Claim. FIC reserved all rights under the Policy and at law. *See letter of January 25, 2015* attached as **Exhibit C**.

25.     By letter dated August 16, 2015 to ABU, FIC acknowledged receipt of the Complaints under the D&O Coverage Section of the Policy. FIC advised that the Complaints met the definition of D&O and Personal Injury Wrongful Acts and triggered a Claim under the Policy.  FIC agreed to provide a defense to ABU under a full reservation of rights, including Exclusion 5(B)(iv), the Sexual Behavior Exclusion, under the Policy and at law.  FIC also advised that the coverage provided by the Policy was excess to all other valid and collectible insurance, including any general liability coverage. ABU's general liability carrier, College Risk Retention Group, has provided a defense to ABU with respect to the Complaints to date. *See letter of August 16, 2015* attached as **Exhibit D**.

26.     By letter dated May 19, 2016 to Mr. Murphy, FIC acknowledged receipt of the Complaints, which were submitted for coverage under the D&O Coverage Section of the Policy.  FIC advised that based upon the Complaints and the investigative material provided, FIC had no duty to indemnify Mr. Murphy, but would provide a defense under a reservation of rights. FIC reserved all

rights, including the right to assert additional terms and provisions under the Policy and at law. *See letter of May 19, 2016* attached as **Exhibit E**.

27.     By letter dated December 20, 2017 to Mr. Murphy, FIC supplemented its May 19, 2016 letter to Mr. Murphy to specifically assert coverage defenses based on Exclusion 5(B)(iv), the Sexual Behavior Exclusion; Exclusion 3(G), the Willful Violation of Statute Exclusion; and Exclusion 3(F)(e) the Emotional Distress Exclusion.  FIC also reserved the right to seek a judicial determination of no coverage permitting it to withdraw from Mr. Murphy's defense.  FIC reserved all rights, remedies and defenses under the Policy, at law and in equity.  *See letter of December 20, 2017* attached as **Exhibit F**.

## COUNT I
**(Declaration of Rights and Responsibilities of Parties -- Claimants v. Mr. Murphy)**

28.     FIC hereby incorporates all the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

29.     The D&O Section of the Policy does not provide coverage to Mr. Murphy for any of the claims made by Claimants in the Civil Actions.

30.     Coverage does not exist under the D&O Section of the Policy for four reasons: (1) coverage is excluded under the Sexual Behavior Exclusion; (2) coverage is excluded for "any Claim…based upon, arising from, or in consequence of bodily injury, mental anguish [or] emotional distress"; (3) coverage is excluded for any "willful violation of any statute [.]"; and (4) Mr. Murphy's alleged actions were not committed in an Insured Capacity.

31.     First, the D&O Section of the Policy excludes coverage for "any Claim . . . based upon, arising from, or in consequence of any actual or alleged Sexual Behavior [.]"  *See* **Exhibit A**, *Endorsement/Rider No. 3 (14-02-21139)*.  Sexual behavior is defined as "any verbal or non-verbal act, communication, contact or other conduct involving sexual abuse, intimidation, molestation, discrimination, harassment or lewdness."  *Id*.  Here, Claimants have alleged that Mr. Murphy took nude

photographs of them with a hidden camera, without permission, and distributed them to at least one other individual. This type of lewd misconduct is excluded by the D&O Section of the Policy.

32.     Second, the D&O Section of the Policy excludes coverage for "any Claim     . . . based upon, arising from, or in consequence of bodily injury, mental anguish, [or] emotional distress [.]" *See* **Exhibit A,** *Endorsement/Rider No. 3 (14-02-21139).* Here, the Claimants seek damages for intentional infliction of emotional distress and allege to have suffered emotional distress. *See generally Amended Complaints.* Therefore, there is no coverage under the D&O Section of the Policy for emotional harm damages.

33.     Third, the D&O Section of the Policy excludes coverage for "any Claim . . . based upon, arising from, or in consequence of . . . the committing of any deliberately fraudulent act or omission or any willful violation of any statute or regulation[.]" *See* **Exhibit A,** *Endorsement/Rider No. 3 (14-02-21139).* Here, the court in the underlying Civil Actions concluded as a matter of law that Mr. Murphy violated W. Va. Code § 61-8-28. *See* **Exhibit G**, *Order Regarding Motions for Summary Judgment, (2/2/18).* Accordingly, there is no coverage under the D&O Section of the Policy for any willful violations of any statute or regulation.

34.     Fourth, the D&O Coverage Section only provides coverage for Personal Injury Wrongful Acts or Wrongful Acts committed in an Insured Capacity. Here, the court in the underlying civil actions concluded as a matter of law that Mr. Murphy was clearly acting outside the scope of his employment when he took the photographs and otherwise violated the privacy of the Claimants. *See* **Exhibit G**, *Order Regarding Motions for Summary Judgment (2/2/18).* Accordingly, there is no coverage under the D&O Coverage Section for claims committed outside of Mr. Murphy's Insured Capacity.

## COUNT II
### (Declaration of Rights and Responsibilities of Parties – Claimants v. ABU)

35.      FIC hereby incorporates all the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

36.      The Claimants allege in the Civil Actions that ABU was negligent in the supervision and retention of Mr. Murphy.  The Policy addresses "Wrongful Acts" as a result of the acts or omissions of ABU, provided those acts are not excluded.

37.      Here, the D&O Section of the Policy does not provide coverage to ABU for any of the claims made by Claimants in the Civil Actions.

38.      First, the D&O Section of the Policy excludes coverage for "any Claim . . . based upon, arising from, or in consequence of any actual or alleged Sexual Behavior [.]"  *See* **Exhibit A,** *Endorsement/Rider No. 3 (14-02-21139).*  Sexual behavior is defined as "any verbal or non-verbal act, communication, contact or other conduct involving sexual abuse, intimidation, molestation, discrimination, harassment or lewdness." *Id.*  Here, Claimants have alleged that Mr. Murphy took nude photographs of them with a hidden camera, without permission, and distributed them to at least one other individual, and that ABU failed to supervise or train Mr. Murphy.  This type of lewd misconduct is excluded by the D&O Section of the Policy.

39.      Second, the D&O Section of the Policy excludes coverage for "any Claim    . . . based upon, arising from, or in consequence of bodily injury, mental anguish, [or] emotional distress [.]" *See* **Exhibit A,** *Endorsement/Rider No. 3 (14-02-21139).*  Here, the Claimants seek damages for intentional infliction of emotional distress and allege to have suffered emotional distress.  *See generally Amended Complaints.*  Therefore, there is no coverage under the D&O Section of the Policy for emotional harm damages.

40.      Third, the D&O Section of the Policy excludes coverage for "any Claim . . . based upon, arising from, or in consequence of . . . the committing of any deliberately fraudulent act or omission or

any willful violation of any statute or regulation[.]" *See* **Exhibit A,** *Endorsement/Rider No. 3 (14-02-21139).* Here, the court in the underlying Civil Actions concluded as a matter of law that Mr. Murphy violated W. Va. Code § 61-8-28. *See* **Exhibit G**, *Order Regarding Motions for Summary Judgment, (2/2/18).* Accordingly, there is no coverage under the D&O Section of the Policy for any willful violations of any statute or regulation.

## COUNT III
**(Declaration of Rights and Responsibilities of Parties -- Claimants v. Mr. Murphy)**

41.     FIC hereby incorporates all the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

42.     The EPL Section of the Policy does not provide coverage to Mr. Murphy for any of the claims made by Claimants in the Civil Actions because the underlying conduct and/or allegations do not meet the definition of Third Party Wrongful Act (sexual harassment) so as to trigger coverage under Insuring Clause 2 of the EPL Policy.

43.     A Third Party Wrongful Act under the EPL Policy, as amended by endorsement, is defined as "harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a Third Party [.]"  Here, the conduct of Mr. Murphy placing a hidden camera in the bathrooms in the dormitory and capturing of nude photographs does not constitute a Third Party Wrongful Act under the EPL Policy.  Therefore, coverage is not triggered under the EPL Policy for the Claimants' claims against Mr. Murphy.

## COUNT IV
**(Declaration of Rights and Responsibilities of Parties – Claimants v. ABU)**

44.     FIC hereby incorporates all the preceding paragraphs of this Complaint as if fully set forth herein verbatim.

45.     The Claimants allege in the Civil Actions that ABU was negligent in the supervision and retention of Mr. Murphy.   However, the EPL Section of the Policy does not provide coverage to ABU

4829-9567-8822.1                                        13

for any of the claims made by Claimants in the Civil Actions because the underlying conduct and/or allegations do not meet the definition of Third Party Wrongful Act (sexual harassment) so as to trigger coverage under Insuring Clause 2 of the EPL Policy.

46.     A Third Party Wrongful Act under the EPL Policy, as amended by endorsement, is defined as "harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a Third Party [.]"   Here, the underlying conduct of Mr. Murphy placing a hidden camera in the bathrooms in the dormitory and capturing of nude photographs does not constitute a Third Party Wrongful Act under the EPL Policy, and in turn, nor does the alleged negligent supervision and retention of Mr. Murphy constitute a Third Party Wrongful Act under the EPL Policy. Therefore, coverage is not triggered under the EPL Policy for the Claimants' claims against ABU.

## PRAYER FOR RELIEF

**WHEREFORE**, FIC respectfully prays for the following relief:

A.     that this Court issue an Order declaring that the Policy does not provide coverage for any claims in the Civil Actions based upon, arising from, or in consequence of any actual or alleged Sexual Behavior; and/or, in the alternative,

B.     that this Court issue an Order declaring that the Policy does not provide coverage for any claims in the Civil Actions based upon, arising from, or in consequence of bodily injury, mental anguish, or emotional distress ; and/or, in the alternative,

C.     that this Court issue an Order declaring that the Policy does not provide coverage for any claims in the Civil Actions based upon arising from, or in consequence of the committing of any deliberately fraudulent act or omission or any willful violation of any statute or regulation; and/or, in the alternative,

D.      that this Court issue an Order declaring that there is no coverage under the D&O Coverage Section for claims committed outside of Mr. Murphy's Insured Capacity; and/or, in alternative,

E.      that this Court issue an Order declaring that the Policy does not provide coverage for any claims in the Civil Actions because the underlying conduct and/or allegations do not qualify as a Third Party Wrongful Act (sexual harassment) under Insuring Clause 2 of the EPL Policy; and/or, in the alternative,

F.      that this Court grant such other legal or equitable relief as it deems appropriate, just or proper under the circumstances.

Respectfully Submitted,

By:/s/ Ftemkos J. Yianne
     Thomas P. Mannion (WV State Bar #6994)
     Ftemkos J. Yianne (WV State Bar # 8623)
     LEWIS BRISBOIS BISGAARD & SMITH LLP
     222 Capitol Street, Fifth Floor
     Charleston, West Virginia 25301
     304.553.0161 (T) / 304.932.0265 (F)
     Thomas.Mannion@lewisbrisbois.com
     Tim.Yianne@lewisbrisbois.com

*Counsel for Federal Insurance Company*