IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**FEDERAL INSURANCE COMPANY,**

    Plaintiff,

v.                                                    CIVIL ACTION NO. 2:18-CV-52
                                                         (BAILEY)

**ALDERSON BROADDUS UNIVERSITY, INC.,**
a West Virginia Corporation;
**COLLINS MURPHY,** as an employee of
Alderson Broaddus and as an
individual; **KRISTINE BURNSIDE;**
**CAYLA RHODES; ERICA BROOKS;** and
**EMILY SARVER,**

    Defendants.

## ORDER DENYING MOTION TO DISMISS THE COMPLAINT FOR DECLARATORY RELIEF

Currently pending before this Court is the Defendants, Kristine Burnside, Cayla Rhodes, Erica Brooks, and Emily Sarver's Motion to Dismiss the Complaint for Declaratory Relief [Doc. 20], filed July 27, 2018. This matter is now ripe for decision. For the reasons set out below, this Court hereby **DENIES** the Motion to Dismiss [Doc. 20].

## I.  BACKGROUND

**A.  Factual Background**

### 1.  Murphy's Underlying Acts

The following facts are undisputed and listed as finding of facts by the state court. In 2011, defendants in this federal action, Kristin Burnside, Cayla Rhodes, Erica Brooks, and Emily Sarver (collectively, the "claimants") were all members of the Women's Basketball team at Alderson Broaddus University ("ABU") [Doc. 1-7, p. 8]. They all resided

1

in Kincaid Hall, a residence hall at ABU [*Id.*]. During the same 2011-2012 academic school year, defendant Collins Murphy was a volunteer assistant coach with the Women's Basketball team and a Resident Director [*Id.* at 4]. During the previous 2010–2011 academic year, Murphy had a paid position as Assistant Coach for the Women's Basketball team [*Id.*].

Over Christmas break of 2011, Murphy intentionally installed hidden cameras in the women's bathrooms and distributed nude images of Burnside, Rhodes, Brooks, and Sarver to third parties and pornographic web sites without their consent or knowledge [*Id.* at 8]. The women and ABU did not become aware of the hidden camera or the dissemination of the images until 2014. On September 17, 2014, Ms. Burnside received the pictures of herself from O'Dell Eargle, a former ABU student. Eargle told Burnside he received the pictures from Murphy. Ms. Burnside contacted the West Virginia State Police the same day, and the police began an investigation. The State Police contacted ABU's Department of Campus Safety regarding a search of a dorm room. Later that month, the other claimants also became aware of the pictures.

On October 18, 2014, Murphy was interviewed by the State Police. Murphy admitted to sending the pictures to Eargle and admitted to installing cameras in outlets of the dorm bathrooms. During a deposition for the state case, Murphy asserted his Fifth Amendment rights and refused to answer further questions.

### 2. *Insurance*

Federal Insurance Company ("FIC") issued the Forefront Portfolio for Not-For-Profit Organizations Policy (the "Policy") for the period from May 1, 2014 to May 1, 2016 [Doc. 1, ¶ 14]. The Policy contains two coverage sections: (1) Directors and Officers Liability and

Entity Liability Coverage Section (the "D&O Section") and (2) Employment Practices Liability Coverage Section (the "EPL Section"). The coverage sections are subject to a maximum aggregate liability of $5,000,000.00 [Doc. 1-1, p. 10].

The part of the Policy most relevant to the instant motion to dismiss is Endorsement Rider No. 3 (14-02-21139) [*Id.* at 43–54]. Most relevant is Section 5 titled **"ADD EXCLUSIONS APPLICABLE TO ALL INSURING CLAUSES**." Under Section 5, the Policy was amended to read:

> (B) The Company shall not be liable for **Loss** on account of any **Claim**:
> . . .
> (iv) based upon, arising from, or in consequence of any actual or alleged **Sexual Behavior** . . .

[*Id.* at 51]. In the Policy, Sexual Behavior is defined as "any verbal or non-verbal act, communication, contact or other conduct involving sexual abuse, intimidation, molestation, discrimination, harassment, or lewdness" [*Id.* at 49].

In October 31, 2014, FIC received a copy of a letter from Ms. Rhodes alleging violation of privacy as a result of Murphy's conduct and requested ABU put its insurance carriers on notice [Doc. 1-3, p. 1]. On January 25, 2015, FIC sent a letter to ABU stating that the matter did not rise to the level of a D&O Claim, Employment Claim, or Third Party Claim under the Policy [*Id.*]. FIC did accept the information as a Potential Third Party Claim, and FIC reserved all rights under the Policy and at law [*Id.* at 3].

After receiving the Complaints under the D&O Section of the Policy, FIC advised ABU that the Complaints did constitute a Claim under the Policy. FIC agreed to provide a defense to ABU under a full reservation of rights, including Exclusion 5(B)(iv), the Sexual

3

Behavior exclusion [Doc. 1-4, pp. 3–4].

On May 19, 2016, FIC sent a letter to Murphy in which FIC stated FIC had no duty to indemnify Murphy, but would defend him under a reservation of rights, including the right to assert additional terms and provisions under the Policy and at law [Doc. 1-5]. On December 20, 2017, FIC sent a letter to Murphy supplementing its previous letter and specifically asserted, among other coverage defenses, a defense based on Exclusion 5(B)(iv) [Doc. 1-6]. FIC also reserved the right to seek judicial determination of no coverage permitting FIC to withdraw its defense of Murphy [*Id.* at 2].

## B. Procedural Background

### *1. State Court Motions for Summary Judgment*

In or about June 2015, each Claimant filed separate Complaints against ABU, Murphy, and O'Dell Eargle [Doc. 23, p.1] in the Circuit Court of Barbour County, West Virginia. The Complaints were amended in March 2016 and eventually consolidated. A hearing was held upon ABU's Motion for Summary Judgment and Claimants' Motions for Partial Summary Judgment.

In the Circuit Court's Orders Regarding Motions for Summary Judgment [Doc. 1-7], submitted July 7, 2017, the court ruled on claims against both ABU and Murphy. The claims against ABU were for: (1) *respondeat superior*; (2) invasion of privacy; (3) tort of outrage; (4) negligent hiring; (5) negligent retention, supervision, and training; and (6) violations of West Virginia Code § 61-3C-1, *et seq*. The court found ABU was entitled to summary judgment on all counts except negligent retention, supervision, and training.

The claims against Murphy were for: (1) invasion of privacy (two separate counts); (2) intentional infliction of emotional distress; (3) violation of West Virginia Code § 61-3C-

4

16; and (4) violation of West Virginia Code § 61-8-28.  The court found the Claimants were entitled to summary judgment for both invasion of privacy counts, intentional infliction of emotional distress, and for West Virginia Code § 61-8-28.  The § 61-3C-16 count was dismissed.

### 2. *Federal Declaratory Judgment Action*

On May 17, 2018, FIC filed a Complaint for Declaratory Relief [Doc. 1].  In the Complaint, FIC asks this Court to declare that it has no obligation to defend or indemnify Murphy or ABU pursuant to the Policy for the claims by claimants.  On July 27, 2018, claimants filed the instant Motion to Dismiss the Complaint [Doc. 20].  In the Memorandum in Support [Doc. 21], Claimants argue that this Court should decline to exercise jurisdiction over the case.  On August 10, 2018, FIC timely filed a Response to Claimants' Motion to Dismiss [Doc. 23].  Claimants did not file a Reply brief.

## II.  LEGAL STANDARD

The Federal Declaratory Judgment Act grants district courts the power, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201; see **Nautilus Ins. Co. v. Winchester Homes, Inc.**, 15 F.3d 371, 375 (4th Cir. 1994).  The Supreme Court has long acknowledged "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." **Quackenbush v. Allstate Ins. Co.**, 517 U.S. 706, 716 (1996) (citations omitted).  This duty to exercise jurisdiction is not absolute, as courts have some discretion to decline exercising jurisdiction over a declaratory judgment within its jurisdiction.  See

***Nautilus***, 15 F.3d at 376.  However, this discretion to decline jurisdiction may only be for "good reason."  ***Aetna Cas. & Sur. Co. v. Quarles***, 92 F.2d 321, 324 (4th Cir. 1937).  A District Court should entertain declaratory judgment actions if it finds that the declaratory relief sought will: (1) "serve a useful purpose in clarifying and settling the legal relations in issue"; and (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  ***Nautilus***, 15 F.3d at 376 (citations and internal quotations omitted).

Specifically in the insurance coverage context, the Fourth Circuit has frequently approved the exercise of jurisdiction for declaratory judgment actions.  *See, e.g.*, ***id***. at 375–76 ("[W]e have frequently approved the use of federal declaratory judgment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought."); ***United Capitol Ins. Co. v. Kapiloff***, 155 F.3d 488, 493–94 (4th Cir. 1998) (stating that a declaratory judgment is designed to address "exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted").  A declaratory judgment is especially appropriate and helpful in the insurance coverage context because it furthers the purpose of the Federal Declaratory Judgment Act and "allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings."  ***Kapiloff***, 115 F.3d at 494.

In ***Nautilus***, the Fourth Circuit articulated a four factor test for district courts to apply in determining whether to exercise jurisdiction in a federal declaratory judgment action while there is a pending state proceeding.  *See* 15 F.3d at 376–77.  The four factors are: (1) the strength of the state's interest in having the issues raised in the federal

6

declaratory action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law;" and (4) whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable." See **id.**

### III. DISCUSSION

### A. State's Interest in Having Issues Raised in Federal Declaratory Action Decided in State Court

The first **Nautilus** factor is the state of West Virginia's interest in having the declaratory action decided in West Virginia state court. The interpretation of insurance coverage issues is a matter of West Virginia law and states do have an interest in resolving issues that involve their own applicable laws. See **Mitcheson v. Harris**, 955 F.2d 235, 237 (4th Cir. 1992). However, a state law issue being raised, by itself, "provides no reason for declining to exercise federal jurisdiction." **Nautilus**, 15 F.3d at 378. Federal district courts routinely interpret state law and rule on state law issues, and the Fourth Circuit directs the district courts that discretion to abstain "may be exercised only when the questions of state law involved are difficult, complex, or unsettled." **Great Am. Ins. Co. v. Gross**, 468 F.3d 199, 211 (4th Cir. 2006). The state's interest is lessened when the issues of state law raised in the federal action prescribe the "routine application of settled principles of law" to a set of facts. **Nautilus**, 15 F.3d at 378; see also **Cont'l Cas. Co. v.**

*Fuscardo*, 35 F.3d 963, 967 (4th Cir. 1994) ("The fact that West Virginia has already considered issues analogous to the issue before the court in the instant case lessens the state's interest in having the particular issue decided in state court.").

Claimants first argue that the strength of the West Virginia state interest weighs against this Court exercising jurisdiction over FIC's declaratory judgment action. They do not argue that the state law to be applied in the federal action is "difficult, complex, or unsettled." They instead contend because there is simply an underlying state proceeding, that should hold significant weight in favor of abstention. [Doc. 21, p. 3 (citing ***Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.***, 139 F.3d 419, 423 (4th Cir. 1998))]. In support of this argument, claimants rely heavily upon a Western District of North Carolina District Court case, ***Argonaut Great Cent. Ins. Co. v. McDowell Cty.***, arguing that where a state action "involving the same parties and presenting opportunities for ventilation of the same state law issues" as the federal court, the federal court "might be indulging in 'gratuitous interference.'" 626 F.Supp.2d 554, 560 (W.D. N.C. 2009). However, even if ***Argonaut*** was binding on this Court, claimants' argument is flawed because the state action does not involve the same parties or same state law issues. FIC is not a party to the state action, and the state action does not involve insurance coverage issues, which is the sole issue in the federal action.

Claimants also argue that there is a state's interest because insurance contracts are governed by state law. FIC argues that the application of state law in this case tasks the federal court with simple application of settled West Virginia insurance law. This Court will examine whether this case is one where the issue of state law is "difficult, complex, or

8

unsettled" or whether it is a routine application of settled law.

Even though FIC argued five separate reasons for why FIC is not obligated to defend or indemnify ABU or Murphy based on different insurance contract provisions in its Complaint, FIC raises only one of these arguments in its response to the motion to dismiss. FIC focuses on the Sexual Behavior exclusion provision of the Policy.

In relevant part, the Policy states that FIC "shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any actual or alleged **Sexual Behavior**." [Doc.1-1, p. 57]. The Policy defines "Sexual Behavior" as "any verbal or non-verbal act, communication, contact or other conduct involving sexual abuse, intimidation, molestation, discrimination, harassment or lewdness." [*Id.* at 49]. FIC argues that Murphy's secret photographing and dissemination of nude photos constitutes lewdness. Therefore, this Court is tasked with examining if West Virginia insurance contract interpretation law in similar context is settled or "difficult, complex, and unsettled."

It is well-settled in West Virginia that "insurance policies are controlled by the rules of construction that are applicable to contracts generally." ***Payne v. Weston***, 195 W. Va. 502, 507, 466 S.E.2d 161, 166 (1995). The Supreme Court of Appeals of West Virginia (the "WVSCA") has also long held that the "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." ***Mitchell v. Fed. Kemper Ins. Co.***, 204 W.Va. 543, 544, 514 S.E.2d 393, 394 (1998); *see also* ***Tennant v. Smallwood***, 211 W.Va. 703, 706, 568 S.E.2d 10, 13 (2002). The issue of whether a contract is ambiguous is a legal determination to be decided by the court. *See* ***Riffe v. Home Finders Assocs., Inc.***, 205 W.Va. 216, 220, 517 S.E.2d 313, 317 (1999).

9

"The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." *Berkeley Cty. Pub. Serv. Dist. v. Vitro Corp. of Am.*, 152 W. Va. 252, 267, 162 S.E.2d 189, 200 (1968).

FIC contends that the Sexual Behavior provision constitutes as an intentional act exclusion, and under settled West Virginia law, intentional act exclusions are enforceable and can preclude insurance coverage.

There is an ample amount of decisions where the WVSCA considers insurance contracts and intentional acts exclusions. More specifically in the context involving sexual misconduct, the WVSCA has considered a number of cases involving intentional acts exclusions in insurance contracts. In *Smith v. Animal Urgent Care*, the WVSCA held that "[t]here is neither a duty to defend an insured in an action for, nor a duty to pay for, damages allegedly caused by the sexual misconduct of an insured, when the liability insurance policy contains a so-called 'intentional injury' exclusion." *Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664, 669, 542 S.E.2d 827, 832 (2000) (quoting Syllabus, *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376, 376 S.E.2d 581, 582 (1988)). For the intentional acts exclusion to apply generally, the WVSCA has held "a policyholder may be denied coverage only if the policyholder (1) committed an intentional act and (2) expected or intended the specific resulting damage." *W. Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 50, 602 S.E.2d 483, 493 (2004) (quoting Syllabus Point 7, *Farmers and Mechanics Mut. Ins. Co. v. Cook*, 210 W.Va. 394, 557 S.E.2d 801 (2001)). In cases involving sexual misconduct, the WVSCA has announced an "inferred-intent" rule, where "the intent of an insured to cause some injury will be inferred as a matter of law."

*Animal Urgent Care, Inc.*, 208 W.Va. at 669, 542 S.E.2d at 832 (citation omitted); *see also* *W. Virginia Fire & Cas. Co. v. Stanley*, 216 W.Va. 40, 50–51, 602 S.E.2d 483, 493–94 (2004) (holding that there is no duty for the insurance company to defend an action caused by sexual misconduct when the policy contained an "intentional injury/acts" exclusion even though the insured was a minor). Therefore in cases involving sexual misconduct, once the policyholder is established to have committed an intentional act, the intent that he expected or intended to cause the specific resulting damage is automatically established.

Because this declaratory action is based on an intentional acts inclusion regarding sexual misconduct, and the WVSCA has ruled on many cases similar to the one at bar, this Court will be able to rely on settled West Virginia law to determine the merits of the declaratory action without interfering with the state court or the state of West Virginia.

Another argument that FIC advances is that the survival of the negligent supervision claim against ABU does not implicate a novel or unsettled area of law for this Court to make a determination on insurance coverage. West Virginia case law is clear that a claim based on an employer's negligence does not preclude the intentional acts exclusion. *See* *Animal Urgent Care, Inc.*, 208 W.Va. at 670–71, 542 S.E.2d at 833–34; *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 381, 376 S.E.2d 581, 587 (1988). In *Animal Urgent Care*, the plaintiff brought (1) sexual harassment claims against a veterinarian based on intentional acts and (2) negligence actions against her employer for failure "to implement proper and appropriate corrective action" and because the employer "knew or should have known" of the sexual harassment. 208 W.Va. at 670–71, 542 S.E.2d at 833–34. The employer argued that since the plaintiff's complaint contained allegations "couched in negligence,"

11

the intentional acts exclusion should be precluded. *Id.* at 670, 542 S.E.2d at 833. The WVSCA rejected this argument, and stated "the inclusion of a negligence-oriented theory of recovery against [the employer] does not alter the essence of the claim for purposes of determining the availability of insurance coverage." *Id.* at 669, 542 S.E.2d at 832.

Even though Claimants have not even attempted argue that the negligence claims preclude the intentional acts exclusion, if they were to make this argument there is clear WVSCA case law that this Court could easily rely on and apply. Accordingly, because West Virginia law is well-settled in this area of intentional exclusion acts and sexual misconduct in insurance contracts, the strength of West Virginia's interest to have the case heard in state court is greatly diminished. Therefore, this first factor weighs against abstention and in favor of FIC.

## B. Efficiency

In evaluating the efficiency factor, district courts are "to focus primarily on "whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]" that are already "pending in the state court [s]." **Nautilus**, 15 F.3d at 378 (quoting **Brillhart v. Excess Ins. Co.**, 316 U.S. 491, 495 (1942)). This requires "careful inquiry into the scope of the pending state court proceeding." *Id.* at 378. District Courts are to consider factors including "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." **Brillhart**, 316 U.S. at 495; *see also* **Nautilus**, 15 F.3d at 378–79. Specifically in the insurance coverage context, the Fourth Circuit has noted the desire for courts to quickly rule on

12

insurance coverage questions. See ***State Farm Fire & Cas. Co. v. Garrity***, 785 F.2d 1225, 1228 (4th Cir. 1986) ("In an ideal world, the policy coverage question would be adjudicated before the state tort suit is tried."); ***Stout v. Grain Dealers Mut. Ins. Co.***, 307 F.2d 521, 524 (4th Cir. 1962) (stating that a federal declaratory action "serves the dual purpose of determining with finality the company's obligation to defend and its ultimate liability for any judgment rendered against the insured").

In ***Nautilus***, an insurance company issued liability insurance to a producer of fire retardant plywood. ***Nautilus***, 15 F.3d at 373. A corporation who builds residential properties eventually filed suits in Maryland and Virginia state courts against the plywood producer, claiming property damage and economic loss due to the deterioration of the plywood. *Id.* The insurance company later filed a declaratory judgment action in United States District Court for the District of Maryland, seeking a declaration that "it was not obligated to defend or indemnify" the plywood producer because, among other reasons, "the claims in question were in any event not within the scope of its coverage." *Id.* The Fourth Circuit held that "we cannot say with any confidence that the issues raised in this federal declaratory action can better be resolved in those proceedings" because the issue in the federal action—whether the insurance company was contractually obligated to defend and indemnify—was not "directly raised" and different from the state tort law issues in the state actions. *Id.* at 379. The ***Nautilus*** court further noted the insurance company was not joined as a party in the state proceedings. *Id.* Therefore, the court held that they could not say that issues of the federal declaratory action could be "more efficiently be resolved in the pending state actions." *Id.*

Here, the case at bar is very similar to **_Nautilus_**. FIC, an insurance company, is seeking to a declaratory judgment that they are not obligated to defend or indemnify a party. This issue is not directly raised in the state proceedings, and FIC is not a party to the pending state action. Additionally, this Court will be able to resolve the single insurance issue quickly. It cannot be said that it would be more efficient to dismiss FIC's complaint, force FIC to somehow be joined as a party to the state action, and have the state court adjudicate an entirely new issue on top of the other ones already pending. Therefore, the efficiency factor weighs against abstention and for FIC.

**C. Entanglement**

The third factor courts are to consider is whether "permitting this federal declaratory action to go forward would result in unnecessary 'entanglement' between the federal and state court systems." **_Nautilus_**, 15 F.3d at 379. "Entanglement" is the presence of "overlapping issues of fact or law." **_Id._** (quoting **_Mitcheson v. Harris_**, 955 F.2d 235, 239–40 (4th Cir. 1992)). Just proving some factual overlap does not constitute entanglement, however; the overlap must be "significant." See **_id._** at 380 ("We are satisfied that there is no _significant_ overlap in the issues of fact that must be decided to resolve these two separate and independent legal controversies.").

Claimants claim that a ruling on FIC's declaratory action constitutes entanglement because a determination would require this Court to determine central issues to the state actions, namely "whether there were intentional acts by the defendants in the underlying action." Claimants further argue that in determining the issue of whether there were intentional acts by the ABU and Collins Murphy in the underlying state action, the state

14

court would then determine the "overlapping coverage issues." Finally, claimants also argue that allowing the federal declaratory action to proceed "would unduly interfere with the activities of the state court in interpreting contracts of insurance."

First, claimants are mistaken that the federal declaratory action would require determination of whether the acts by ABU and Murphy were intentional or not. As an initial matter, after the state court's Order Regarding Motions for Summary Judgment [Doc. 1-7], the only remaining issues for the state court are: (1) the claim against ABU for negligent retention, supervision, and training; and (2) damages for emotional distress sustained by claimants. Additionally, the state court has already found that Murphy acted intentionally and granted summary judgment for ABU in all claims other than the negligent retention, supervision, and training count. As FIC correctly asserted, the issue of intent on behalf of ABU and Murphy has already been determined in the state court and therefore, the federal court's determination could not interfere with those conclusions.

Second, contrary to claimants' argument, there are no "overlapping" insurance coverage issues between the federal action and the state action. There is no insurance coverage claim in the state action and FIC is not even joined as a party in the state claim. Since there are no insurance issues in the state claim, once the state court hears all the evidence and rules on it, the insurance issue would still be undetermined. Therefore, this argument by claimants is flawed.

Third, claimants' argument that permitting the federal action to proceed "unduly interferes" with the state courts' interpretation of insurance contracts is not persuasive. Again, there is no insurance contract issues in the state action, so there is no state court interpretation necessary. Further, federal courts are able to and routinely apply state law

15

in interpretation of contracts, as well as countless other issues.

In conclusion, because the state court has already determined the issue of intent on the parts of ABU and Murphy and the issues being adjudicated in state court are distinct from the issues in federal court, the entanglement factor weighs against abstention and for FIC. Even though the two cases may have some factual overlap, the overlap is not "significant" and will not interfere with the state court's adjudication of the underlying state tort claims.

### D. Procedural Fencing

The last **Nautilus** factor, procedural fencing, weighs in favor of FIC. Under this factor, courts are to consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, 'to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'" **Nautilus**, 15 F.3d at 377 (internal citation omitted). Procedural fencing has been defined by the Fourth Circuit to exist when "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Id.* at 380; see also **Great Am. Ins. Co. v. Gross**, 468 F.3d 199, 212 (4th Cir. 2006). Even if "the parallel state court action is filed before the federal declaratory judgment action, courts will not generally find procedural fencing without some further evidence of forum shopping." **Allstate Prop. & Cas. Ins. Co. v. Cogar**, 945 F.Supp.2d 681, 692 (N.D. W.Va. 2013) (Keeley, J.).

Claimants argue that courts should decline to exercise jurisdiction "regardless of the rationale" behind the filing in federal court and again cite to a non-binding North Carolina

case. FIC argues that since there are no insurance coverage issues pending in the state court action, that FIC initiating a federal action does not constitute procedural fencing. This Court agrees with FIC, and goes further. In addition to there being no insurance coverage issues in the state action, FIC is not even a party in the state court action, and claimants have not offered any evidence to support FIC's possible forum shopping. Therefore, the fourth and final *Nautilus* factor weighs in favor of FIC and against abstention.

## IV. CONCLUSION

Accordingly, for the reasons stated above, Defendants' Motion to Dismiss the Complaint for Declaratory Relief [Doc. 20] is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

**DATED**: September 11, 2018.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE